UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPEEDSHAPE, INC.,

        Plaintiff,                                    Civil Action No. 11-cv-14670

        v.                                         District Judge Arthur J. Tarnow
                                                  Magistrate Judge Laurie J. Michelson

CONNOR MEECHAN d/b/a
Relevant VFX,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO REMAND [4] AND TO DENY DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR TO TRANSFER VENUE [2]**

This cases involves a former employee's alleged misappropriation of confidential and proprietary information of his former employer. Plaintiff Speedshape, Inc. ("Speedshape") filed this suit against its former employee, Defendant Connor Meechan, asserting, *inter alia*, that Meechan breached an employment agreement by using and disclosing Speedshape's confidential and proprietary information. (Dkt. 1, Compl. ¶ 23.) Presently before this Court for Report and Recommendation are two motions: (1) Plaintiff's Motion to Remand Case to State Court (Dkt. 4), which asserts that this Court lacks subject-matter jurisdiction; and (2) Defendant's Motion to Dismiss for Improper Venue, Or, In the Alternative, for Transfer of Venue (Dkt. 2), which seeks dismissal, or, alternatively, that this Court transfer this case to the Central District of California. On December 15, 2011, this Court heard oral argument on the above motions.

For the following reasons, the Court RECOMMENDS that Plaintiff's Motion to Remand be

DENIED and that Defendant's Motion to Dismiss or Transfer be DENIED.[1]

## I. BACKGROUND

Plaintiff Speedshape "specializes in providing digital and creative content for commercial campaigns." (Compl. ¶ 5.) For instance, according to Speedshape, one of its perennial projects was the Grey Advertising-Hess Oil Company Project ("Grey-Hess Project"), which, according to Meechan, involves digital and special effects work for Hess Oil's annual toy-truck promotion. (Compl. ¶ 14-15; Dkt. 9, Def.'s Resp. to Pl.'s Mot. Remand, Ex. A, Dec. 2011 Meechan Decl. ¶ 21.) Speedshape is a Delaware corporation with its principal place of business in Michigan. (Compl. ¶ 1.) Although Speedshape has a California office, it "consists of three individuals, and over 90% of all operations of the company are conducted in or from Michigan." (Dkt. 6, Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer, Ex. 3, Nov. 2011 Stone Decl. ¶ 10.)

Defendant Meechan worked for Speedshape from November 2003 until April 2011. (Dec. 2011 Meechan Decl. ¶ 4; Compl. ¶ 9.) In 2008 and 2009, Meechan allegedly worked on, and had "intimate knowledge" of, the Grey-Hess Project. (Compl. ¶ 15.) Until mid-2008, Meechan worked for Speedshape exclusively in Michigan and lived with his wife in their Ferndale, Michigan house. (Dkt. 2, Def.'s Mot. to Dismiss or Transfer, Ex. A, Oct. 2011 Meechan Decl. ¶ 5.)

Meechan explains that in mid-2008, "Speedshape requested that I consider relocating to the state of California to improve the operation and performance of the company's Los Angeles area office." (Oct. 2011 Meechan Decl. ¶ 6.) Meechan agreed to the move, and, according to Meechan,

---

[1] A motion seeking remand, dismissal for improper venue, or transfer to another forum is considered dispositive. *See generally, Payton v. Saginaw County Jail*, 743 F. Supp. 2d 691 (E.D. Mich. 2010) (holding that magistrate judge must recommend transfer of venue and drawing analogy to motion to remand).

after a trial period, "[California] became a permanent commitment for the company and for me." (Oct. 2011 Meechan Decl. ¶ 6.) Meechan entered a one-year lease, beginning October 2008, for an apartment in Playa Del Rey, California. (Oct. 2011 Meechan Decl. ¶ 7.) Speedshape clarifies, however, that it "did not require Meechan to make California his permanent home." (Dkt. 4, Pl.'s Mot. Remand at 7.)

According to Meechan, in Fall 2008, "Speedshape began to negotiate an employment agreement with me that would require my full time residence in California." (Dec. 2011 Meechan Decl. ¶ 7.) Toward the end of December 2008, Meechan made arrangements to ship his belongings from Michigan to California. (*Id.* ¶ 12.) And on December 30, 2008, Meechan executed an Employment Agreement with Speedshape that includes the confidentiality and trade-secret restrictions at issue in this case. (*See* Compl. ¶ 8; Dec. 2011 Meechan Decl. ¶ 9.) The Agreement also provides that Meechan would work for Speedshape in California and Speedshape would pay up to $10,000 to cover his associated moving expenses. (*See* Dec. 2011 Meechan Decl. ¶ 10.)

Meechan began residing in California in January 2009. (Dec. 2011, Meechan Decl. ¶ 13.) Meechan's wife, however, did not accompany Meechan to California. Meechan explains that when "Speedshape transferred me to California, [my wife] was unable to find . . . employment [comparable to her Michigan automotive design work] in California." (*Id.* ¶ 16.) But, says Meechan, "[m]y wife continues to seek professional opportunities in Southern California, near me and near her extended family." (*Id.*) Since January 2009, Meechan has returned to Michigan five times (for a total of 45 days) to visit his wife. (*Id.* ¶ 22.)

In March 2011, "Meechan's position with [Speedshape] was eliminated and he was laid off." (Dkt. 6, Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer, Ex. 4, Thomas Aff. ¶ 6.) Yet Meechan

remained in California. In fact, Meechan opened his own (allegedly competing) visual-effects studio, Relevant VFX, in Santa Monica, California. (Dec. 2011 Meechan Decl. ¶ 18.) On July 1, 2011, Meechan moved into a new apartment in Playa Del Rey, California. (Oct. 2011 Meechan Decl. ¶ 16.) The lease is through June 30, 2012. (*Id.*)

This suit was filed in Oakland County Circuit Court on September 27, 2011 and removed to this Court on October 24, 2011. (Dkt. 1 at ECF Pg ID 3, 9.)

## II. ANALYSIS

Plaintiff has moved to remand this case to state court for lack of subject-matter jurisdiction. Defendant has moved to dismiss this case on the basis of improper venue, and, should venue be deemed proper, to transfer this case to a federal court in California for the convenience of those involved. Because this Court's authority to hear this case is threshold, the Court will address Plaintiff's motion first.

### A. This Court Has Subject-Matter Jurisdiction Over Plaintiff's Complaint

Meechan removed this case from state court on the basis of diversity jurisdiction. (Dkt. 1, Notice of Removal ¶ 4.) And Speedshape has challenged the allegations in the removal notice. (*See generally*, Pl.'s Mot. Remand.) As such, "the burden is on [Meechan] to prove the existence of complete diversity." *Shulman v. Czerska*, No. 11-10983, 2011 WL 2669471, at *3 (E.D. Mich. July 8, 2011) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986)).[2] Complete diversity of citizenship among the parties

---

[2]Plaintiff also asserts that there is a presumption in favor of the prior domicile, here, Michigan. (Pl.'s Mot. to Remand at 6 (citing *Herzog v. Herzog*, 333 F. Supp. 477, 478 (W.D. Penn. 1971).) All that means in this case is that Meechan has both the burden of persuasion and production on the issue of diversity. *See Brinkman v. Schweizer Aircraft Corp.*, No. 10-04601, 2011 WL 863499, at *4 (N.D. Cal. Mar. 10, 2011). Because it is Meechan's ultimate burden on

is determined with regard to the time the complaint was filed. *Bateman v. E.I. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910, 911 (E.D. Mich. 1998). Further, citizenship, for purposes of 28 U.S.C. § 1332, turns on an individual's domicile: the individual's physical presence in the state with the intent to remain there indefinitely. *Bateman*, 7 F. Supp. 2d at 911 ("'[A] change in domicile requires only the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere.'" (quoting *Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir. 1981))). In this case, the parties only dispute the intent requirement.

An individual's intent to remain at his residence is a highly fact-specific inquiry. Factors that courts consider in determining that intent include:

- how permanent the party's present living arrangement appears;
- whether the party rents or owns that residence;
- the location of the party's spouse and family (including where the party's kids go to school);
- the location of the party's personal and real property;
- the location of the party's brokerage and bank accounts;
- the party's voting registration and voting practices;
- the location of the party's place of employment or business;
- the location of the party's club and religious memberships;
- the location of the social organizations the party is affiliated with;
- where the party's driver's license was issued and where the party's automobile is registered;
- which state taxes the party pays; and
- the locations of the party's physician, lawyer, accountant, dentist, stockbroker, and other service providers.

*See Bateman*, 7 F. Supp. 2d at 911; *Brinkman v. Schweizer Aircraft Corp.*, No. 10-04601, 2011 WL 863499, at *3 (N.D. Cal. Mar. 10, 2011). No one factor is controlling, and the focus is on the objective facts and not the party's statement of intent. *Brinkman*, 2011 WL 863499, at *3 ("'[T]he

---

diversity jurisdiction the latter burden is largely subsumed. *Cf. id.* (defendants had burden of persuasion on ultimate issue of diversity while plaintiff, seeking to show a change in domicile, had burden of production).

5

actual fact of residence and a real intention of remaining there, as disclosed by [a party's] entire course of conduct, are the controlling factors in ascertaining his domicile.'" (quoting *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985))).

Here – as expected in cases where domicile is genuinely disputed – the above factors cut both ways. On Meechan's side of the scale: Meechan had lived in California for over two-and-a-half years by the time this suit was filed (returning to Michigan only five times for a total of 45 days) and had leased a California apartment through June 2012, most of his day-to-day personal belonging are in California (including his vehicle), Speedshape withheld California resident income taxes and Meechan still pays California taxes, Meechan now runs a business in California, the accountant for that business is located in California, Meechan has personal and business bank accounts in California and Meechan's physicians to the extent that Plaintiff has them – are presumptively in California. And on Speedshape's end: Meechan's wife lives in Michigan, Meechan – and his wife – have claimed a Michigan tax-exemption wherein they provided that their Michigan house is the principal residence, Meechan pays property taxes on his Michigan home, Meechan merely rents in California, Meechan has recently renewed his vehicle registration in Michigan and he holds a Michigan driver's license, and Meechan has retained a Michigan law firm in this matter.

After a careful consideration of the above factors, the Court concludes that, while close, Meechan is a California domiciliary. Speedshape rightly places heavy reliance on the fact that Meechan's wife lives in Michigan. But this is not dispositive. *See Napletana v. Hillsdale College*, 385 F.2d 871, 873 (6th Cir. 1967) ("We believe that for purposes of federal diversity jurisdiction a married woman can have a legal domicile separate from that of her husband."). In this case, the scale tips in Meechan's favor because after he was let go from Speedshape, he did not return to

6

Michigan to live with his wife in their Michigan house. Rather, he decided to start a business in California (as opposed to Michigan) and signed another lease on a California apartment. This is strong evidence of his intent to stay in California indefinitely. Meechan has also explained that his wife is presently looking for work in California. Thus, as Meechan has explained, "in the months after his release by Speedshape, Meechan doubled down on California, exhibiting a determination to stay and build a personal and commercial future there, not leave." (Def.'s Resp. to Pl.'s Mot. to Remand at 14.)

Accordingly, this Court concludes that Meechan has carried his burden of establishing diversity of citizenship between himself and Speedshape. The Court therefore has subject-matter jurisdiction over Speedshape's Complaint. Plaintiff's motion to remand should be denied.

### B. Venue Is Proper In This Judicial District

Defendant asserts that in order for venue to be proper in this case, one of the three criteria set forth in 28 U.S.C. § 1391(a) must be met.[3] However, the language of that statute indicates it governs only where suits may be "brought." And this suit was "brought" in a Michigan state court. Therefore, as explained by the Supreme Court in interpreting an earlier version of the statute, the controlling law is instead 28 U.S.C. § 1441:

---

[3]28 U.S.C. § 1391(a) states,
> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

> Section 1391(a) limits the district in which an action may be 'brought.' Section 1391(c) similarly limits the district in which a corporation may be 'sued.' This action was not 'brought' in the District Court, nor was Respondent 'sued' there; the action was brought in a state court and removed to the District Court. Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'

*Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953); *see also Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 534 (6th Cir. 2002) ("Venue in removed cases is governed solely by § 1441(a)."); Charles Alan Wright *et al.*, 14C *Federal Practice and Procedure* § 3732 (4th ed. 2009) ("[T]he general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to a federal court. It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.").

Under 28 U.S.C. § 1441, venue is proper. That section provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. 1441(a). This case was filed in Oakland County Circuit Court and 28 U.S.C. § 102(a)(1) provides that the Southern Division of the Eastern District of Michigan includes Oakland County. Venue is therefore proper. *See Kerobo*, 285 F.3d at 534 ("Here, the action was removed to the district court in the Eastern District of Michigan from state court within the area embraced by the Eastern District of Michigan. Hence, the action was removed to the only venue permitted by § 1441(a)."); *Three M Enterprises, Inc. v. Texas D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450, 455 (D.

8

Md. 2005) ("By requiring removal to the district court for the district in which the state action is pending, Section 1441(a) properly fixes the federal venue in that district. Indeed, courts have recognized that Section 1441(a) establishes federal venue in the district where the state action was pending as a matter of law, even if venue would be improper under state law when the action was originally filed." (internal quotation marks and citations omitted)); *Hart v. U.S.*, No. 2:03-cv-1133, 2004 WL 1559569, at *7 (S.D. Ohio May 17, 2004) ("[I]n determining the proper venue of a removed action, '§ 1391 has no application.' . . . This action was removed by the United States from the Ohio Supreme Court which is located in Columbus, Ohio to this Court which is also located in Columbus, Ohio. Therefore, the action was removed to the district court and division embracing the state court where it was pending. Thus, venue is proper in this Court.").

### C. Plaintiff's Choice of Forum Should Not Be Disturbed

Meechan asserts that even if venue is proper here, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Def.'s Mot. to Dismiss or Transfer at 11-12.) That statutory provision provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate. Only when the district court 'clearly abuse[s] its discretion' in balancing these considerations will [the decision be] reverse[d]." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)).

In exercising its discretion, this Court considers the following non-exhaustive list of factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). Critically, "[t]he Court must give deference to the plaintiff's choice of forum, which is not disturbed 'unless the balance is strongly in favor of the defendant.'" *P & M Corp. Finance, LLC v. Paparella*, No. 10-10448, 2010 WL 3766472, at *2 (E.D. Mich. Sept. 21, 2010) (quoting *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989)); *accord Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 850 (S.D. Ohio 2007) ("The balance of convenience, considering all the relevant factors, 'should be strongly in favor of a transfer before such will be granted.'" (quoting *First Bank of Marietta v. Bright Banc Savings Assoc.*, 711 F. Supp. 893, 896-97 (S.D. Ohio 1988))). In this case, the equities are largely balanced, or at least do not tip "strongly in favor" of a transfer to a federal court in California.[4]

Beginning with factors (1), (2), and (5) – they are largely neutral. Meechan asserts that all of his relevant documents are in California. (Def.'s Mot. to Dismiss or Transfer at 11.) But Speedshape provides that the relevant "documents and proof that make up [its] trade secrets, proprietary and confidential information . . . are maintained in Michigan." (*Id.* at 10.)[5] Regarding the first and fifth factors, Meechan explains that "third party witnesses and third party documents

---

[4] The parties do not dispute that this suit could have been brought in the U.S. District Court for the Central District of California.

[5] Although Meechan argues that Speedshape can readily transmit its documents electronically, it is unclear why the same would not be true for much of Meechan's evidence.

connected to the Grey/Hess Project, past and present, are located mostly in or near California, but none in Michigan." (Def.'s Mot. to Dismiss or Transfer at 11.) As explained in greater detail at the hearing, Meechan asserts that the "creative people" associated with the Grey-Hess Project are located in San Francisco, California. But Speedshape provides that "[i]ndividuals representing Grey Advertising and Hess Oil would be coming from New York, thousands of miles closer to Michigan than California." (Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer at 10.) At the hearing, although contested by Meechan, Speedshape clarified that those who had decision-making authority as to hiring Meechan for the Grey-Hess Project are located in New York. Moreover, Speedshape says its witnesses – including developers who could testify that the material Meechan is accused of using originated with Speedshape – are located in Michigan. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer at 9-10.) As to the handful of employees it has in California, Speedshape provided that they would be unlikely witnesses in this suit.

Factors (6) and (7) are also largely balanced. Regarding the sixth factor, Speedshape, the larger party, likely has more financial means to litigate away from its home base, but, on the other hand, Meechan is a single individual who can presumptively mobilize at lower costs. And, as noted, Meechan has already retained Michigan counsel in this matter. As for factor (7), the Employment Agreement at issue has a choice-of-law provision which provides for the application of California law. (Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer, Ex. 2, Employment Agreement § 16.7.) It is not a stretch to say the U.S. District Court for the Central District of California more frequently applies California contract law than courts in this District. But, on the other hand, it appears that

at least Speedshape's misappropriation of trade secrets claim would be governed by Michigan law.[6]

Factor (4) favors Meechan while factor (3) favors Speedshape. Regarding the locus of operative facts, Meechan asserts that he performed services in California under an Employment Agreement executed in California. (Def.'s Mot. to Dismiss or Transfer at 9.) And, says Meechan, to the extent that he misappropriated propriety or confidential information, he did so by actions he took while in California. (*Id.* at 10.). But, regarding the third factor, Meechan maintains a house in Michigan and his wife resides here. The burden and inconvenience on Meechan of traveling and defending in Michigan is therefore significantly lessened. As noted, Meechan has traveled to Michigan five times for a total of 45 days in the past three years.

In sum, the Court finds that the balance of equities do not tip strongly in favor of Meechan, and, therefore, Speedshape's choice of forum should be honored. *See Wayne Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 975 (E.D. Mich. 2009) ("A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." (citing *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990))). Defendant's motion to transfer venue for the convenience of the parties and in the interest of justice should be denied.

## III. RECOMMENDATION AND CONCLUSION

---

[6]Speedshape claims that "[t]hree of the four counts in the complaint would be governed by Michigan law. Only one count would fall under [California] law." (Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer at 11.) In his Reply, Meechan did not refute this assertion. (*See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss or Transfer at 5.) The Court notes that "misappropriation of trade secrets is a tort." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 413 (6th Cir. 2006). And, "[u]nder Michigan law, tort claims are determined according to the law of the forum, unless there is a 'rational reason' to displace the forum's law. As the effects of the alleged tort were felt in Michigan, and the parties agree that Michigan law applies, there is no 'rational reason' to look to any other law." *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F. Supp. 1216, 1223 n.3 (E.D. Mich. 1997) (internal citation omitted).

For the foregoing reasons, the Court RECOMMENDS that Plaintiff's Motion to Remand be DENIED and that Defendant's Motion to Dismiss for Improper Venue or Transfer be DENIED.

## IV. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES MAGISTRATE JUDGE

Dated: December 19, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 19, 2011.

                                        s/Jane Johnson
                                        Deputy Clerk